IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 2, 2003  Session

## STEPHANIE RENFRO MEDLYN v. PETER EARL MEDLYN

**Direct Appeal from the Chancery Court for Grainger County**
**No. 98-109     Hon. Telford E. Forgety, Jr., Judge**

**FILED AUGUST 11, 2003**

**No. E2002-02031-COA-R3-CV**

Wife's action to enforce Divorce Settlement Agreement resulted in monetary judgment against husband.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Scott D. Hall, Sevierville, Tennessee, for Appellant.

J. Wayne Wolfenbarger, Rutledge, Tennessee, for Appellee.

## OPINION

Subsequent to the parties' divorce, "wife" petitioned the Court to hold the "husband" in contempt for failure to pay off indebtedness that husband had agreed to pay in Divorce Settlement Agreement.

After an evidentiary hearing, the Court held that husband was not in willful contempt, but that he nonetheless owed the wife $8,000.00 plus the debt on a BMW motor vehicle in the amount of $18,971.46.  The husband appealed.

At the time of the divorce, the parties entered into a Divorce Settlement Agreement

which was incorporated in the Decree. The Divorce Settlement Agreement states that the husband would pay wife $35,000.00 in cash by November 30, 1998. It also provided that the wife was to have possession and title to a 1998 BMW, and that the husband would "assume, pay and hold the wife harmless for any indebtedness on the said automobile within 36 months". In the wife's Petition for Contempt, she alleged that the husband still owed $8,000.00 on the cash judgment and had paid nothing toward the BMW debt, which was $18,791.46. Husband in his Answer, stated that the BMW loan had been paid off when it was traded by the wife, and that the husband had made the payments up until that time. He admitted that he had not paid the balance on the $35,000.00 Judgment, as alleged.

At the hearing on the Petition, the husband testified that he discussed the BMW indebtedness with the wife, but they reached no agreement about his paying her, rather than the credit union. He conceded that he signed the odometer statement for the wife to trade the vehicle, and that he was aware she was making the trade. He testified he made the payments on the BMW until the trade.

On appeal, the husband argues that the parties' agreement was unclear, and that any ambiguity should be resolved against the drafter, which was wife's attorney. The agreement provides that husband will "assume, pay and hold the wife harmless for any indebtedness on the said automobile [BMW] within 36 months." This provision admits no ambiguity. As our Supreme Court explained, we must "ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). Pursuant to the usual and ordinary language used in the agreement, the husband clearly obligated himself to pay any debt on the BMW within 36 months, and to hold the wife harmless therefrom.

It is important to note that the agreement does not say the husband was to make payments for 36 months and then stop, or that if the debt was paid by some other source he was no longer obligated. Rather, it expresses the husband was to pay any debt on the car within a 36 month period. Moreover, the husband never testified that he thought the agreement said anything other than what it says, and he did not testify that he thought he only had to make payments for 36 months. In fact, when asked if he thought the trade of the BMW wiped out the debt on it, he replied, "Not really."

The court found the husband was under an obligation to pay the debt on the BMW, and the fact that this debt was refinanced did not relieve husband of his obligation. Further, the Court found the debt should have been paid in full by November 2001, and since the husband had not paid it, he therefore owed the full amount of $18,791.46. The evidence doe not preponderate against the Court's findings. Tenn. R. App. P. 13(d).[1]

---

[1]Husband also attempted to argue that wife waived or unilaterally changed the terms of the agreement, but there is no evidence to support these arguments, and the issue was not raised at the trial level.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Peter Earl Medlyn.

_____
HERSCHEL PICKENS FRANKS, J.